IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAMON CHARGOIS | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO. 4:21-CV-02427 |
| V. | § | |
| | § | |
| LABATON SUCHAROW, | § | |
| ERIC J. BELFI, AND CHRISTOPHER | § | |
| J. KELLER | § | |
| | § | |
| Defendants. | | |

## **<u>DEFENDANTS' MOTION TO DISMISS</u>**

Murray Fogler
*Attorney in Charge*
State Bar No. 07207300
Federal I.D. No. 2003
mfogler@foglerbrar.com
Robin O'Neil
State Bar No. 24079075
Federal I.D. No. 1618035
roneil@foglerbrar.com
**FOGLER, BRAR, O'NEIL & GRAY LLP**
2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile:  (713) 574-3224

**ATTORNEYS FOR DEFENDANTS**

# **TABLE OF CONTENTS**

I.   **INTRODUCTION**......................................................................................................1

II.  **FACTUAL BACKGROUND**......................................................................................2

III. **ARGUMENT AND AUTHORITIES**............................................................................4

    A. **Plaintiff's Claim Should Be Dismissed for Lack of Personal Jurisdiction.**.................................................................................5

       *1.*   *Plaintiff's Own Evidence Demonstrates that the Terms of the Alleged Agreement were Discussed Not in Texas but in Little Rock, Arkansas.*..........................................................9

       *2.*   *Plaintiff's Claims Do Not Arise Out of Defendants' Alleged Texas Contacts.*....................................................................11

    B. **Plaintiff's Claim Should be Dismissed Pursuant to Federal Rule 12(b)(3) Because Venue is Improper in the Southern District of Texas.**.................................................................14

    C. **Finally, Should the Court Find it Has Personal Jurisdiction *and* that Venue is Proper in the Southern District of Texas, Plaintiff's Claim Should Still Be Dismissed for Failure to State a Claim on Which Relief Can Be Granted as it Pertains to Belfi and Keller.**.................................................................16

IV. **CONCLUSION**.................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC,*
    878 F. Supp. 2d 779 (S.D. Tex. 2012) ................................................................15

*Ashcroft v. Iqbal,*
    556 U.S.662 (2009) ............................................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 570 (2007) ...................................................................................16

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) .............................................................................................8

*Carmona v. Leo Ship Mgmt., Inc.,*
    924 F.3d 190 (5th Cir. 2019) ...............................................................................7

*Clark v. Kick,*
    9 F. Supp. 2d 747 (S.D. Tex. 2000) ........................................................ 8, 12, 13

*Crabtree v. Tristar Auto. Group, Inc.,*
    776 F. Supp. 155 (S.D.N.Y. 1991) .....................................................................17

*Daimler AG v. Bauman,*
    571 U.S. at 127 (2014) ......................................................................................5, 6

*Danziger & De Llano, LLP v. Morgan Verkamp, LLC,*
    Civil Action No. 4:20-CV-144, 2021 WL 1381238
    (S.D. Tex. 2021) ............................................................................ 8, 11, 12, 13

*Garcia Hamilton & Assocs., L.P. v. RBC Capital Markets,*
    *LLC,* 466 F. Supp. 3d 692 (S.D. Tex. 2020) ........................................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) .............................................................................................6

*Herman v. Cataphor, Inc.*,
    730 F.3d 460 (5th Cir. 2013) ..............................................................................14

*Jones v. Petty-Ray Geophysical Geosource, Inc.*,
    954 F.2d 1061(5th Cir. 1992) ...............................................................................5

*Mandell v. Hamman Oil and Refining Co.*,
    822 S.W.2d 153 (Tex. App.—Houston [1st Dist.] 1991, writ denied)..............17

*McCaskey v. Continental Airlines, Inc.*,
    133 F. Supp. 2d 514 (S.D. Tex. 2001).................................................................14

*Mullins v. TestAmerica, Inc.*,
    564 F.3d 386 (5th Cir. 2009) .................................................................................5

*Norris v. Housing Authority of City of Galveston*,
    980 F. Supp. 885 (S.D. Tex. 1997)......................................................................16

*Pervasive Software Inc. v. Lexware GmbH& Co. KG*,
    688 F.3d 214 (5th Cir. 2012) .................................................................................8

*Quick Techs., Inc. v. Sage Grp. PLC*,
    313 F.3d 338 (5th Cir. 2002) .................................................................................5

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) .................................................................................7

**Statutes**

28 U.S.C. § 1391(b) ....................................................................................................14
28 U.S.C. § 1406(a) .............................................................................................. 14, 15

**Rules**

FED. R. CIV. P. 12(b)(2)................................................................................................5
FED. R. CIV. P. 12(b)(3)........................................................................................ 14, 15
FED. R. CIV. P. 12(b)(6)..............................................................................................20

Defendants, Labaton Sucharow LLP ("Labaton"), Eric J. Belfi ("Belfi"), and Christopher J. Keller ("Keller") (collectively, "Defendants"), move to dismiss Plaintiff Damon Chargois' ("Plaintiff") claim for declaratory judgment for (1) lack of personal jurisdiction; (2) improper venue; and (3) with respect to Belfi and Keller, failure to state a claim upon which relief can be granted.

## I.    INTRODUCTION

Plaintiff asks this Court to declare his rights under an alleged oral agreement that Labaton would pay Plaintiff 20% of any fees Labaton earned on matters involving clients Plaintiff referred.  None of the Defendants are residents of Texas or have any significant contacts here; the client Plaintiff referred to Labaton does not reside in Texas; and the cases involving the disputed fees were litigated outside of Texas.  The Petition fails to provide any basis on which this Court can exercise personal jurisdiction over any of the Defendants.  Moreover, venue is improper since the only alleged connection to the state is Plaintiff's business location.

Belfi and Keller also move to dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiff's claim is difficult to follow, but even given a generous reading, Plaintiff has not pleaded any facts that would sustain a claim against Belfi and Keller as a matter of law.

## II.   FACTUAL BACKGROUND

Defendant Belfi met Plaintiff Chargois by phone in 2005 while working on an antitrust case pending in the Southern District of New York.  Belfi Dec. ¶ 3 (attached as **Exhibit 1**).  Both are attorneys.  At the time, Belfi was at a New York law firm other than Labaton, and Chargois was a partner in the firm of Chargois & Herron, which had offices in Little Rock, Arkansas and Houston, Texas.  *Id.*  Belfi joined Labaton in 2006.  *Id.* ¶ 4.

In June 2007, Chargois was retained as local counsel in a case Labaton was handling on behalf of a class of plaintiffs against HCC Holdings in the Southern District of Texas.  *Id.* ¶ 6.  After that litigation concluded, Chargois reached out to inform Belfi that Chargois could introduce Labaton to prospective securities plaintiffs in Arkansas, Texas, and Oklahoma, including the Arkansas Teacher Retirement System ("ATRS").  Orig. Pet. ¶ 12; Ex. 1 ¶ 4.  In July 2007, Belfi and his partner at Labaton, Defendant Keller, traveled to Chargois' office in Little Rock, Arkansas where they met with Chargois to discuss the potential financial terms of their collaboration.  Ex. 1 ¶ 5; Keller Dec. ¶ 4 (attached as **Exhibit 2**).  The parties discussed that, in exchange for Chargois' work on a case involving a client referred

2

by Chargois, Chargois & Herron would receive a referral fee.[1]  Ex. 1 ¶ 5.  No formal agreement was made.  *Id.*

In April 2009, Chargois emailed Belfi and Keller a draft letter agreement with Labaton laying out the proposed terms of an arrangement as Chargois claimed to understand them.  Ex. 2 ¶ 5.  Keller returned the letter agreement with extensive edits.  *Id.*  Chargois never commented on the edits; in fact, he did not respond at all. *Id.*  The parties never agreed to specific terms.  *Id.*

Labaton filed several suits on behalf of ATRS over the next several years.  Ex. 1 ¶ 9.  With the exception of the BP case as described below, Chargois did not appear as counsel; nor did he perform work on any of these cases.  *Id.*  Labaton paid Chargois a share of its fees in cases where ATRS was lead plaintiff, with the percentage varying on a case-by-case basis.  *Id.*  As cases resolved, the arrangement was generally discussed on phone calls, via email, or during Chargois' visits to Labaton's New York office.  *Id.* ¶ 8.

In 2018, however, ATRS directed Labaton to no longer pay any "finder's fees" or "bare referral fees" in any current or future case where Labaton represented ATRS.  *Id.* ¶ 10.  And in 2020, a federal judge presiding over a case where Chargois

---

[1] Defendants reserve all defenses, including the right to challenge the capacity in which Chargois has sued.

3

was paid a fee in 2016 determined that any undisclosed arrangement to pay a fee to a lawyer who had not performed any work on the case would be improper.  *Id.* ¶ 11.

Nevertheless, Chargois continued to demand referral fees on ATRS cases on which he did not perform any work.  *Id.* ¶ 12.  There are five remaining cases in which Chargois claims to be entitled to a referral fee.  *Id.*  Three of those cases were litigated in the Southern District of New York, and two in the Northern District of California.  *Id.*  None were litigated in Texas.[2]  *See id.*

Chargois filed this action seeking a declaratory judgment that his arrangement with Labaton is enforceable and that he is entitled to 20% of the fees that Labaton has received or may receive in these cases.  In addition to suing Labaton, Chargois named Belfi and Keller individually as defendants although he does not claim to have had any agreement or arrangement with Belfi or Keller individually and does not explain any other basis for suing them.

## III.    ARGUMENT AND AUTHORITIES

Plaintiff asks this Court to declare his rights under an alleged oral agreement with a New York law firm that was (1) negotiated outside of Texas, (2) pertained to

---

[2] Labaton acknowledges that Chargois is owed a fee for his work as local counsel in the BP oil spill litigation that recently concluded in the Southern District of Texas.  That fee is based on the number of hours Chargois spent on the case, and will be paid when Chargois submits his time records to Labaton.  Ex. 1 ¶ 13.  Unlike the cases that are the subject of Chargois' declaratory judgment action, Chargois actually provided legal services in the BP litigation.

a client not based in Texas, and (3) performed in New York and California.  Because none of the cases involving a disputed fee were litigated in Texas, the Court lacks personal jurisdiction over Defendants and the case should be dismissed or, alternatively, transferred to the Southern District of New York.  Moreover, Belfi and Keller are entitled to judgment as a matter of law that they were not parties to the oral contract at issue and should be dismissed.

A.   **Plaintiff's Claim Should Be Dismissed for Lack of Personal Jurisdiction.**

When a nonresident defendant files a Rule 12(b)(2) motion to dismiss, "the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant."  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343-44 (5th Cir. 2002).

Personal jurisdiction over a non-resident defendant is proper only if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992).  Because the Texas long-arm statute extends to the limits of federal due process, the two-step process collapses into a single due process inquiry.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

Personal jurisdiction can be general or specific.  The Supreme Court's *Daimler AG v. Bauman* decision established that the exercise of general jurisdiction,

over a defendant that is neither organized in the forum state nor has its principal place of business there, is appropriate only in an "exceptional case" where the foreign defendant's "affiliations with the State are 'so continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman,* 571 U.S. at 127, 139 n. 19 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Garcia Hamilton & Assocs., L.P. v. RBC Capital Markets, LLC*, 466 F. Supp. 3d 692, 699 (S.D. Tex. 2020) ("Courts have made clear that it is incredibly difficult for a plaintiff to establish general jurisdiction under the exceptional case doctrine[.]") (internal quotation marks removed).

Plaintiff does not appear to allege that the Court has general jurisdiction over Defendants, nor, in light of the high standard set forth in *Daimler*, could it meet that burden. Labaton is not organized under Texas law, but under New York law; its principal place of business is located in New York; and not even one of the firm's partners resides or has an office in Texas. Ex. 2 ¶ 3. Labaton's Texas contacts are limited to its occasional handling of litigation in the state, a far cry from the kind of connections that might subject it to general jurisdiction. *Id.*; *see Garcia Hamilton,* 466 F. Supp. at 699 (describing contacts that gave rise to general jurisdiction in a textbook exceptional case).

Instead, Plaintiff appears to allege that Defendants' contacts with the state of Texas pertaining to the alleged agreement at issue subjected them to specific

6

jurisdiction here.  *See* Orig. Pet. at ¶ 8.  To determine whether the exercise of specific jurisdiction comports with due process, the court considers:

> (1) whether the defendant has minimum contacts with the forum state, that is, whether it has purposefully availed itself of the privileges of conducting activities in the forum such that it should reasonably anticipate being haled into court there;

> (2) whether the plaintiff's claim arises out of or results from the defendant's contacts with the forum; and

> (3) whether the exercise of personal jurisdiction would be fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Plaintiff contends that Defendants negotiated and formed the alleged agreement in Texas:

> Defendants purposefully availed themselves of the jurisdiction of the instant court, when they travelled to the state to conduct business with Plaintiff on a continuing basis since 2007.  Defendants presented the terms of the agreement during trips to the State of Texas and engaged in negotiations of the agreement making the basis of the lawsuit in the State of Texas.

Orig. Pet. at ¶ 8 (internal citations omitted).

There are two problems with Chargois' allegations.  First, the allegations regarding formation of the alleged agreement contained in the Petition are

inconsistent with Plaintiff's own testimony, referenced in support of the allegations, which states that the agreement was discussed in Little Rock, Arkansas.  Ex. A to Orig. Pet. at 19:15-20:17; 50:11-52:16 (attached as **Exhibit 3**).  Plaintiff's sworn testimony is consistent with Belfi's and Keller's declarations regarding the location of discussions about the referral fee.  *See* Ex. 1 ¶ 5; Ex. 2 ¶ 4. Follow-up discussion concerning the alleged agreement, which was never finalized, took place by phone calls and e-mails with Labaton attorneys located in New York.  Ex. 1 ¶ 8.

Second, even if Plaintiff's testimony supported his pleading, the state where the alleged agreement was negotiated is only one factor in the purposeful availment inquiry and is rarely dispositive.  *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (explaining that in a breach of contract case, the court considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).  This Court has made clear that the real driver of the personal jurisdiction analysis in a fee dispute is whether the case that is the subject of the disputed fee was litigated in Texas.  *See Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, Civil Action No. 4:20-CV-144, 2021 WL 1381238, at *4 (S.D. Tex. 2021) (holding the court lacked specific personal jurisdiction where case involving disputed fee was "litigated and settled . . .

entirely [in Pennsylvania]"); *Clark v. Kick*, 9 F. Supp. 2d 747, 751-52 (S.D. Tex. 2000).  Here, no case involving a disputed fee was litigated in Texas.

### 1.    *Plaintiff's Own Evidence Demonstrates that the Terms of the Alleged Agreement were Discussed Not in Texas but in Little Rock, Arkansas.*

In his Petition, Plaintiff contends that, in late 2006, Belfi traveled to Houston to work on a securities case in the Southern District of Texas that involved a company called HCC Holdings.  *See* Orig Pet. ¶ 10.  Chargois alleges that Belfi asked him to get involved with that case and had general discussions with Chargois about client development.  *Id.* ¶¶ 10, 11.  Chargois claims that "[a]fter a successful result in the HCC Securities Litigation," he had a conversation in Houston, during which "the parties came to agreement that for each and every case that Damon Chargois acted as local and/or liaison counsel, then Defendant Labaton would compensate Plaintiff Chargois.  The agreed compensation would be twenty percent (20%) of all attorneys' fees recovered for the case."  *Id.* ¶ 12.

In support of that statement, Chargois cites deposition testimony he gave in a case litigated in Massachusetts, in which the judge, ironically, found the alleged arrangement to be improper (given that Chargois had not done any work on the case).  *Id.*  The sworn testimony cited contradicts the statement in the Petition that the conversation about the terms of the arrangement occurred in Houston.  Plaintiff

testified that the alleged agreement was reached not in Houston, but in Little Rock, Arkansas:

> Q.  Okay.  As a result of your having made this introduction of Labaton to Arkansas Teachers, did you come to an agreement or a contract or something formal or informal with respect to your ongoing relationship with Labaton?
>
> A. Yes, sir.
>
> Q.   Could you tell us about that?
>
> A.  Sure.  If the—the agreement as they presented it to me was if ultimately they are selected to represent any institutional investor that I facilitated an introduction to, if they are successful in obtaining a recovery, they would split their attorneys' fees with my firm 80 percent/20 percent.
> . . .
> THE SPECIAL MASTER: Were the discussions with Eric Belfi or Chris Keller or both?
>
> THE WITNESS:  Good question.  ***When Eric Belfi and Chris Keller came down to Little Rock*** that first time that we'd already talked about—
> . . .
> THE WITNESS:  ***When they came to Little Rock to meet with myself***, and I believe Tim was there as well—
>
> THE SPECIAL MASTER:  Oh, okay.
>
> THE WITNESS:—in our offices, they said here's what we're interested in.  We would like to have a presence in Little Rock.  We don't have one currently.  We'd like a presence in Houston because we don't have one currently.  We like to work with local counsel.   You're local counsel.   And they presented the arrangements I just told you about.

Ex. 3 at 50:11-52:16 (emphasis added).

Plaintiff's testimony is consistent with that of Belfi and Keller, both of whom recall a meeting with Chargois at his office in Little Rock to discuss the potential terms of the proposed arrangement.  Ex. 1 ¶ 5; Ex. 2 ¶ 4.  Neither Keller nor Belfi traveled to Houston for the HCC litigation and Keller had not met Chargois before the meeting in Little Rock.  Ex. 1 ¶ 6; Ex. 2 ¶¶ 3, 4.

In short, while Plaintiff's pleading says the terms of the alleged agreement were discussed in Houston, his own sworn testimony—confirmed by Belfi and Keller—makes clear that the meeting in fact happened in Arkansas.  The only Texas contacts Plaintiff has alleged relate to the period of time *before* the alleged agreement was reached.

### 2. *Plaintiff's Claims Do Not Arise Out of Defendants' Alleged Texas Contacts.*

But even if Plaintiff had evidence that the terms of the alleged arrangement were discussed at a meeting in Houston, that would still not be enough to confer jurisdiction over Defendants.  The location of the negotiation is not what drives the jurisdictional inquiry in a fee allocation dispute.

This Court's *Danziger & De Llano, LLP v. Morgan Verkamp, LLC* decision is instructive.  There, the plaintiff, a Texas law firm, referred potential qui tam clients to Morgan Verkamp, LLC, an Ohio firm.  *Danziger*, 2021 WL 1381238, at *1.  Two of the referrals resulted in a co-counsel engagement on cases that were litigated in Texas, but those cases were not the subject of the fee dispute.   *Id.* at *1-2.  The fee

dispute arose from another case in which the plaintiff had referred a foreign client to the defendants. *Id.* The case involving the disputed fee had been discussed via email and phone among the Texas-based plaintiff, the defendants, and the foreign client. *Id.* at *4. It then went dormant for a few years before the defendants filed, litigated, and settled the matter in Pennsylvania without involving the plaintiff. *Id.*

Plaintiff sued the Ohio firm and several of its partners for breach of an oral contract, among other things, seeking to recover the alleged referral fee for the case that was litigated without it. *Id.* at *2. The defendants filed a motion to dismiss based on lack of personal jurisdiction. *Id.* Plaintiff contended the parties had entered into an oral fee agreement for the case in question, similar to the one that had existed with respect to the two cases tried in Texas, and should have anticipated being haled into court in Texas based on that agreement. *Id.* at *3.

This Court disagreed, finding that nothing in the two cases litigated in Texas "would suggest that Defendants have sufficient minimum contacts in this case." *Id.* at *4. The Court emphasized that if there was an oral agreement with respect to the case involving the disputed fee, neither the defendants nor the client in question were in Texas when it was made, nor was performance required in Texas. *Id.* Instead, the disputed matter was "filed, litigated, and settled" in Pennsylvania. *Id.* The Court concluded: "It follows that Plaintiff supplied the only connection between

12

Defendants and Texas in the Epp Case and, as such, cannot use this relationship to show purposeful availment." *Id.*

By contrast, in *Clark v. Kick*, the Court found the out-of-state lawyer defendants were subject to personal jurisdiction in Texas where they had litigated the case involving the disputed fee in Texas for ten months, and filed a notice of attorney lien to protect their interest in fees arising from that litigation in Texas. *Clark*, 79 F. Supp. 2d at 751-52.

This case is factually aligned with *Danziger*, not *Clark*. Defendants, a New York-based law firm and individual New York lawyers, represented an Arkansas-based client referred to them by Chargois, in cases that were litigated in states other than Texas. While Defendants have handled other unrelated matters in Texas, those matters either pre-dated the alleged referral arrangement (as with HCC) or involved a different fee arrangement that is not contested (as with BP). Here, as in *Danziger*, the residency of the Plaintiff supplies the only connection between Defendants and Texas as it pertains to the disputed fee. No case in which Plaintiff claims to be entitled to a referral fee was litigated in Texas. Three were litigated in the Southern District of New York, and two in the Northern District of California. Ex. 1 ¶ 12. Thus, Plaintiff has failed to demonstrate that Defendants took any deliberate actions in Texas with respect to the purported fee agreement, and the Court lacks specific personal jurisdiction over Defendants. Plaintiff's claim should be dismissed.

B. **Plaintiff's Claim Should be Dismissed Pursuant to Federal Rule 12(b)(3) Because Venue is Improper in the Southern District of Texas.**

If Plaintiff's claim is not dismissed for lack of jurisdiction, Defendants seek dismissal for improper venue, or in the alternative, transfer of the claim to the Southern District of New York, where all Defendants are citizens and where (as explained below) venue is proper.  *See* FED. R. CIV. P. 12(b)(3) (dismissal for improper venue); 28 U.S.C. § 1406(a) (permitting a court to transfer a case "to any district or division in which it could have been brought"); *Herman v. Cataphor, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) (explaining that 28 U.S.C. § 1406(a) allows a court to transfer a case as an alternative to dismissal if it lacks personal jurisdiction over the defendant, provided the transfer is in the interest of justice).

Venue in diversity cases lies where any defendant resides; where a substantial part of the events giving rise to the claim occurred; or, if there is no district in which the action may otherwise be brought, in any judicial district in which any defendant is subject to the court's personal jurisdiction.  28 U.S.C. § 1391(b).  Plaintiff has the burden to properly plead, and when challenged, demonstrate that venue in the district is proper by setting forth facts that, taken as true, would establish venue.  *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).

In his state-court pleading filed prior to removal, Plaintiff alleges that venue is proper "in as much as the negotiations and initial agreement making the basis of

the lawsuit took place in Houston, Harris County, Texas." Orig. Pet. ¶ 9.  As explained above, Plaintiff's own testimony, which is incorporated into his Original Petition by reference, states the alleged agreement was actually made in Little Rock, Arkansas.  Plaintiff's sole allegation of proper venue is thus contradicted by the very evidence submitted in support of his claim.  Moreover, none of the cases involving a disputed fee were litigated in Texas.   In other words, Plaintiff has not established that *any* part of the events giving rise to the claim—much less a substantial one—occurred in the Southern District of Texas.

No Defendant resides in Texas; the events giving rise to Plaintiff's claim occurred outside of Texas; and the Court lacks personal jurisdiction over all of the Defendants.  Thus, Plaintiff does not allege—and cannot prove—any facts that provide a legitimate basis for venue in the Southern District of Texas.  Accordingly, Plaintiff's claim should be dismissed for improper venue or, at the very least, transferred to the Southern District of New York, where all the Defendants reside and the majority of the cases in which Plaintiff claims an interest were litigated.  *See* FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a); *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC,* 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012) (explaining that if venue is improper in the district court where the action was filed, a court may, in its discretion, dismiss the action or transfer it to any district in which it could have been brought).

### C.   Finally, Should the Court Find it Has Personal Jurisdiction *and* that Venue is Proper in the Southern District of Texas, Plaintiff's Claim Should Still Be Dismissed for Failure to State a Claim on Which Relief Can Be Granted as it Pertains to Belfi and Keller.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009).

Here, Plaintiff has sued all Defendants, including Belfi and Keller individually, for a declaration that they "are estopped from not paying the agreed upon fee for local and/or liaison counsel work." Orig. Pet. ¶ 16. But nowhere in his Original Petition does Plaintiff allege that Belfi or Keller were parties to the alleged agreement. The agreement is described as follows: "[T]he parties came to agreement that for each and every case that Damon Chargois acted as local and/or liaison counsel, then *Defendant Labaton* would compensate Plaintiff Chargois." *Id*. ¶ 12 (emphasis added).

"[I]t is an elementary rule of law that privity of contract is an essential element of recovery in an action based on a contractual theory." *Norris v. Housing Authority of City of Galveston*, 980 F. Supp. 885, 892 (S.D. Tex. 1997) (citing *Mandell v.*

*Hamman Oil and Refining Co.*, 822 S.W.2d 153, 161 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *Crabtree v. Tristar Auto. Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.").[3]

Thus, Plaintiff has failed to state a claim on which relief can be granted against Belfi and Keller individually.   Rule 12(b)(6) provides an independent basis to dismiss Plaintiff's claim as to the individual defendants.

## IV.   CONCLUSION

As set forth above, Plaintiff's claim for declaratory judgment should be dismissed for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted as it pertains to the individual defendants. Alternatively, venue should be transferred to the United States District Court for the Southern District of New York.

---

[3] A detailed choice-of-law analysis is unnecessary at this time because the privity requirement is a universal principle of contract law.  The laws of Texas and New York are substantially the same with respect to this issue.

**August 2, 2021**

Respectfully submitted,

**FOGLER, BRAR,
O'NEIL & GRAY LLP**

*/s/ Murray Fogler*

Murray Fogler
State Bar No. 07207300
Federal I.D. No. 2003
mfogler@foglerbrar.com
2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile:  (713) 574-3224
**ATTORNEY-IN-CHARGE FOR
DEFENDANTS**

Robin O'Neil
State Bar No. 24079075
Federal I.D. No. 1618035
roneil@foglerbrar.com
**FOGLER, BRAR,
O'NEIL & GRAY LLP**
2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile:  (713) 574-3224
**OF COUNSEL FOR
DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 2nd day of August, 2021, a true and correct copy of the foregoing has been served on all counsel of record by the Court's electronic filing system, as well as email as set forth below:

> Randall O. Sorrels
> Alexandra Farias-Sorrels
> SORRELS LAW
> randy@sorrelslaw.com
> alex@sorrelslaw.com
> 5300 Memorial Dr., Suite 270
> Houston, Texas 77007
> 713-496-1100 (Tel)
> 713-238-9500 (Fax)
>
> **COUNSEL OF RECORD FOR**
> **PLAINTIFF DAMON CHARGOIS**

> */s/ Murray Fogler*
> Murray Fogler

<u>**CERTIFICATE OF CONFERENCE**</u>

I hereby certify that on this 2nd day of August, 2021, I notified counsel for Plaintiff of the issues asserted in Defendants' 12(b)(6) Motion.  Mr. Sorrels asked to see a copy of the Motion to give it further consideration, but did not commit to amending his pleading to drop the individuals from the suit, which, in Defendants' view, would be the only permissible amendment that could cure the defect.

> */s/ Robin O'Neil*
> Robin O'Neil