IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAMON CHARGOIS §<br>§<br>   Plaintiff, §<br>§<br>V. §<br>§<br>LABATON SUCHAROW, §<br>ERIC J. BELFI, AND CHRISTOPHER §<br>J. KELLER §<br>§<br>   Defendants. § | C.A. NO. 4:21-CV-02427 |

### **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants, Labaton Sucharow LLP ("Labaton"), Eric J. Belfi ("Belfi"), and Christopher J. Keller ("Keller") (collectively, "Defendants"), file this reply in support of their Motion to Dismiss Plaintiff Damon Chargois's ("Chargois") claim for declaratory judgment [Dkt. No. 4].

### I.   PROCEDURAL POSTURE

Following Defendants' filing of their Motion to Dismiss, Chargois filed an Amended Complaint [Dkt. No. 11], which did not cure any of the jurisdictional or other deficiencies of his Original Petition that was removed to this Court [Dkt. No. 1-4]. Therefore, in lieu of filing an amended motion to dismiss, Defendants stand on their original Motion, and ask this Court to dismiss Chargois's claim as described in his First Amended Complaint for (1) lack of personal jurisdiction; (2) improper

venue; and (3) in the alternative, with respect to Belfi and Keller, failure to state a claim upon which relief can be granted.[1]  Because Chargois has already taken advantage of an opportunity to amend as a matter of course and has not requested leave to further amend his pleading, his claims should be dismissed without leave to amend.

## II.   INTRODUCTION

In response to Defendants' Motion to Dismiss, Chargois principally argues that the alleged oral fee agreement that he has asked this Court to enforce encompassed not only cases involving the Arkansas Teachers Retirement System, but also *potential* Texas clients to whom he allegedly introduced Defendants. But Chargois neither alleges nor demonstrates that any of those potential Texas clients

---

[1] If an amended complaint filed in response to a motion to dismiss does not address the defects asserted in the motion, the court need not deny the original motion as moot. *See Good River Farms, LP v. TXI Operations, LP*, 1:17-cv-1117-RP, 2018 WL 1770494, at *3 (W.D. Tex. Apr. 12, 2018) (citing *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, No. 16-12910, 2016 WL 442995, at *2 (E.D. La. Aug. 22, 2016)); *see also Pettaway v. Nat'l Recovery Solutions, LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020) ("[W]hen a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint.").

Throughout this reply, Defendants cite Chargois's First Amended Complaint for Declaratory Judgment, and ask that the Court apply the arguments set forth in their original Motion to Dismiss to the operative pleading.

actually retained Labaton or that any case in which he claims to be entitled to unpaid fees was litigated in Texas — the driver of the jurisdictional inquiry in a fee dispute.

Chargois also fails to explain how the mere introduction of Belfi and Keller to potential Texas clients or emails and phone calls with Chargois relating to the alleged agreement would subject Defendants to jurisdiction in the state. This Court has held that it has jurisdiction over a non-resident defendant in a fee dispute only if the defendant litigated the case involving the disputed fee in Texas. Chargois tries but fails to distinguish this authority. He urges the Court to rely instead on a single, wholly unrelated tort case in which a non-resident defendant subjected himself to personal jurisdiction by making misrepresentations to a Texas-based plaintiff through phone calls and emails in order to gain access to and steal information from its servers in Texas. Here, Chargois has not alleged a tort against any of the Defendants in his Original Petition or his Amended Complaint. His only claim is for a declaratory judgment as to whether or not the alleged fee agreement is enforceable as a contract.

The lack of any pleaded tort claim (much less a viable claim) similarly dooms Chargois's case against Belfi and Keller. The Amended Complaint raises the issue of whether an enforceable agreement exists between Chargois and Labaton. As such, the only appropriate parties to the dispute are Chargois and Labaton. In the unlikely event Chargois were to prevail, complete relief could be granted against

Labaton. It is neither necessary nor proper for individual defendants Belfi and Keller to be named as Defendants. While Chargois attempts in his opposition to characterize their discussions of the alleged agreement as "tortious," he has not alleged any tort against them in his Amended Complaint. Nor has he alleged—even on his second try, with ample notice of the deficiencies of his Original Petition—that either Belfi or Keller was a party to the alleged oral contract he seeks to enforce.

Chargois's claim should be dismissed.

### III.  ARGUMENT AND AUTHORITIES

#### 1. *Personal Jurisdiction Does Not Lie Over Defendants Because – By Chargois's Own Admission – No Case Involving a Disputed Fee was Litigated in Texas.*

Chargois now appears to concede (1) that the alleged agreement he asks this Court to enforce was reached at a meeting with Belfi and Keller that took place outside of Texas, and (2) that no case involving a disputed fee has been litigated in Texas. Chargois contends that personal jurisdiction is nevertheless appropriate in Texas because Defendants supposedly (1) purposefully sent emails and made phone calls to Chargois knowing he was in Texas; (2) discussed with Chargois potential cases in three states including Texas; and (3) visited Texas to speak with potential public pension fund clients in Texas. Pl.'s Resp. ¶¶ 20, 21. We first examine the allegations and evidence (or lack thereof) that Chargois offers in support of these points, and then explain why – even if there were such evidence, which there is not—

these allegations would not be enough to subject Defendants to personal jurisdiction in Texas.

It is Chargois's burden to come forward with evidence sufficient to establish that the Court has personal jurisdiction over Defendants. *See Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343-44 (5th Cir. 2002) (the plaintiff bears the burden of adducing evidence demonstrating that personal jurisdiction is proper). Thus, his response is notable for what it lacks: Chargois has not submitted a declaration attesting to the jurisdictional facts, nor has he adduced any other evidence that supports his jurisdictional arguments. Chargois offers no evidence that any Defendant emailed or called Chargois about the alleged agreement knowing Chargois was receiving that email or call while in Texas; he offers no evidence that any of the alleged "potential" Texas clients he introduced to Labaton actually retained the firm; and he offers no evidence that any Defendant traveled to Texas to meet with any of those alleged potential clients.[2]

---

[2] The only evidence Chargois has adduced in support of his response is a declaration that Defendant Keller (mistakenly identified in the response as Defendant Belfi) gave in another case identifying clients and potential clients other than the Arkansas Teachers Retirement System ("ATRS") with respect to which he asserted that Labaton had had a fee-sharing arrangement with Chargois. That declaration affirms that none of the potential Texas clients Chargois claims to have introduced to Labaton (Texas Teachers Pension Fund, Houston Municipal Employees Pension Fund, and the Houston Firefighters) actually retained the firm. *See* Pl.'s Resp. ¶ 20; Resp. Ex. 1 [Dkt. 13-1] ¶¶ 1-5. It also reflects that there is *no dispute* over the fee Chargois is owed for his work on the matter involving BP, which was the only case pending in the Southern District of Texas on which Chargois

5

But even assuming *arguendo* that Chargois had presented competent evidence supporting his alleged bases for personal jurisdiction, Chargois has not explained why any of these alleged contacts would subject Defendants to personal jurisdiction in Texas. As explained in Defendants' Motion, substantial authority from this Court establishes that personal jurisdiction lies over non-resident defendants in a fee dispute only if the case involving the disputed fee was litigated in the forum. *See Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, Civil Action No. 4:20-CV-144, 2021 WL 1381238, at *4 (S.D. Tex. March 29, 2021); *Clark v. Kick*, 79 F. Supp. 2d 747, 751-52 (S.D. Tex. 2000). Chargois concedes that no case involving a disputed fee was litigated in Texas.

Of the *Danziger* case, which held this Court lacked personal jurisdiction over out-of-state lawyers who litigated a case involving a disputed fee outside of Texas, Chargois contends only that the case is "inapplicable" because it involved a breach of contract claim as opposed to a suit for declaratory judgment, and because it involved "one specific foreign case" as opposed to multiple potential cases in Texas. Pl.'s Resp. ¶¶ 21, 25.

Of course, for jurisdictional purposes, there is no meaningful difference between asking a court to declare a party's rights under an alleged contract and suing

---

worked with Labaton. Resp. Ex. 1 [Dkt. 13-1] ¶ 3. Chargois does not allege that case was covered by the alleged oral agreement that is the subject of his Amended Complaint.

for breach of that contract. Moreover, Chargois fails to mention that *Clark v. Kick*, a declaratory judgment action involving "a dispute by Texas and California attorneys over the proper apportionment of attorneys' fees," applied substantially the same jurisdictional analysis as *Danziger*. 79 F. Supp. 2d at 749.

Despite his ineffectual attempt to distinguish *Danziger*, Chargois's jurisdictional arguments focus primarily on Defendants' email and phone communications relating to the formation and performance of the alleged fee-sharing agreement. He contends that Defendants' telephonic and email contacts with Chargois while in Texas "were ***instrumental in the formation of the agreement*** whereby Plaintiff was forced to bring this declaratory judgment . . ." Pl.'s Resp. at 8 (emphasis added).[3]

Chargois argues that *Fintech Fund, F.L.P. v. Horne*, 836 Fed. Appx. 215 (5th Cir. 2020), compels the Court to conclude that "phone calls and emails 'constituted sufficient minimum contacts to satisfy due process concerns.'" Pl.'s Resp. ¶ 18. That unpublished case did not involve a dispute over attorneys' fees, or indeed, any type of contract claim. Rather, it involved claims under the Computer Fraud and Abuse Act and the Defend Trade Secrets Act against the CEO of a company

---

[3] As explained in Defendants' Motion to Dismiss, the place of alleged contract formation does not drive the jurisdictional analysis. But even if it did, Chargois does not contest his own testimony – as confirmed by the declarations of Belfi and Keller – that the alleged fee-sharing arrangement he seeks to enforce was first discussed at a meeting that did not take place in Texas.

7

affiliated with the Texas-based plaintiff, who had secured access to the plaintiff's servers for his personal use by making affirmative misrepresentations over phone calls and emails to the company's representative in Texas. *Fintech,* 836 Fed. Appx. at 218. The court concluded that the defendant "directed his allegedly tortious conduct at Texas, and he directed it at a Texas entity that he knew as a Texas entity." *Id.* at 221.

Here, while Chargois has amended the "Jurisdiction and Venue" section of his pleading to allege that "[e]ach Defendant have [*sic*] committed tortious acts within the district and/or aimed their tortious acts toward this district," he has not pleaded any tort claim or any tortious conduct. First Am. Compl. ¶ 5. His First Amended Complaint requests only "a declaration of the parties' respective rights and duties under the [*sic*] and requests the Court to declare the aforementioned conduct of Defendant as in violation of the agreement made between the parties so that future controversies may be avoided." *Id.* ¶ 17.

Further, as explained above, there is no evidence that Defendants knew Chargois – who had multiple offices in multiple states – was in Texas when they were communicating with him regarding the alleged arrangement. But even to the extent there were phone and email communications incident to the alleged agreement between Defendants and Chargois while he was in Texas, that is precisely the kind of contacts this Court found were insufficient to sustain personal jurisdiction

over the out-of-state lawyers in *Danziger*. Chargois's Response itself quotes the relevant language: "An exchange of communications in the course of developing and carrying out a contract with a Texas resident does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law." Pl.'s Resp. ¶ 23 (quoting *Danziger*, 2021 WL 1381238, at *3).[4]

Finally, Chargois's argument that *Danziger* is distinguishable because it involved only one specific foreign suit as opposed to multiple "potential" cases is equally unavailing. The plaintiff in *Danziger* urged this Court to consider its fee arrangement with the defendants in cases that were actually litigated in Texas as evidence of sufficient minimum contacts with the forum to support specific jurisdiction. But because those Texas cases were not the ones giving rise to the disputed fee, the Court declined to do so: "So whatever the parties had agreed to in the *Vanderslice* and *Galmines* cases, nothing in those transactions or the parties' prior course of dealing would suggest that Defendants have sufficient minimum

---

[4] *See also Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 426–30 (Tex. App.—Houston [14th Dist.] 2014), *aff'd sub nom. Searcy v. Parex Res., Inc.*, 496 S.W.3d 58 (Tex. 2016) ("Changes in technology have made reliance on phone calls obsolete as proof of purposeful availment. While the ubiquity of 'caller ID' may allow nonresidents to know a caller's telephone number, that number no longer necessarily indicates anything about the caller's location.") (internal citations omitted); *Bryan v. Gordon*, 384 S.W.3d 908, 917 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[W]e believe the purposeful-availment analysis should not turn on the fortuity of where the Texas resident was physically located when the defendant e-mailed the contract or when the defendants made allegedly actionable misrepresentations by e-mail.").

contacts in this case." *Danziger*, 2021 WL 1381238, at *4. There is no basis, then, to consider Defendants' involvement with potential Texas clients that never retained the firm, nor potential future Texas clients as evidence of sufficient minimum contacts with the forum.

In short, Chargois's response fails to distinguish this Court's precedent establishing that personal jurisdiction in a fee dispute depends on whether a case involving the disputed fee was litigated in the forum. Even in his First Amended Complaint – with full notice of the deficiencies of his jurisdictional allegations – Chargois fails to allege that any case involving a disputed fee was litigated in Texas. Defendants' evidence testimony on this point is uncontested and conclusively establishes that there was no such case. Chargois's claim should be dismissed for want of personal jurisdiction.

### 2. *Venue is Not Proper in the Southern District of Texas.*

Chargois devotes all of two paragraphs to Defendants' motion to dismiss for improper venue. He contends that because "for approximately 2 years – a substantial amount of time, the parties discussed the agreement between the parties" and because "Defendants' contacts with Texas was [*sic*] instrumental in the formation of the agreement," a "substantial part of the events giving rise to Plaintiff's claim seeking a declaratory judgment regarding the overall agreement made between the parties substantially occurred in this Court's venue." Pl.'s Resp. ¶ 27.

It is undisputed that no Defendant resides in Texas; that the alleged agreement was discussed at a meeting outside Texas; that the cases involving a disputed fee were litigated outside of Texas; and that none of the "potential Texas clients" Chargois contends he introduced to Defendants actually retained them, much less paid any fee that could be a subject-matter of this action.

As explained above, Chargois has not adduced any competent evidence demonstrating that Defendants engaged in any discussion of the alleged agreement with Chargois while he was in Texas, nor that Defendants met with any "potential Texas clients" in Texas. But even if he had, those "contacts" would not be sufficient to support personal jurisdiction over any Defendant and can hardly be called "a substantial part of the events giving rise to Plaintiff's claim."

There is no legitimate basis for venue in the Southern District of Texas. If Plaintiff's claim is not dismissed for want of personal jurisdiction, it should be dismissed for improper venue, or transferred to the Southern District of New York.

### 3. *Chargois's Amended Complaint Does Not State a Claim Against Belfi or Keller.*

Chargois contends his First Amended Complaint "provided Defendants with sufficient facts to show this Court that Plaintiff specifically identified Defendants Belfi and Keller and their wrongful actions to address Defendants' argument that Plaintiff's Original Petition only made allegations against Labaton." Pl.'s Resp. ¶ 32. Chargois has indeed added a few allegations regarding Belfi's and Keller's

conduct as it pertains to the alleged agreement (e.g., he contends "either Belfi, Keller or both" attended meetings with potential Texas clients, First Am. Compl. ¶ 10; and that "Belfi and Keller have caused the payments to be made in the past however refuse to cause the payments to be made currently," *id.*), but he has missed Defendants' point.

While Chargois describes Belfi's and Keller's conduct as "tortious," he has not alleged any tort or any other claim that would subject either of the individuals to liability. *Id.* ¶ 16, 17. And he has still not alleged that Belfi and Keller were parties to the agreement he asks this Court to enforce. The agreement as Chargois continues to describe it was between Labaton and Chargois: "Defendants Belfi and Keller negotiated with Plaintiff and eventually came to agreement that for each and every case that Damon Chargois acted as local and/or liaison counsel in any state including, but not limited to, Texas, then **Defendant Labaton** would compensate Plaintiff Chargois. The agreed compensation would be twenty percent (20%) of all attorneys' fees recovered for the respective case." *Id.* ¶ 9 (emphasis added).

In short, Chargois's First Amended Complaint remains limited to a request that the Court declare the parties' rights under a contract that Belfi and Keller are not a party to. Thus, Chargois has failed to state a claim against Belfi and Keller. *See Norris v. Housing Authority of City of Galveston*, 980 F. Supp. 885, 892 (S.D. Tex. 1997) ("[I]t is an elementary rule of law that privity of contract is an essential

12

element of recovery in an action based on a contractual theory.") (citing *Mandell v. Hamman Oil and Refining Co.*, 822 S.W.2d 153, 161 (Tex. App.—Houston [1st Dist.] 1991, writ denied)). If Chargois's claim is not dismissed for want of personal jurisdiction or improper venue, at the very least, his claim against Belfi and Keller individually should be dismissed pursuant to Federal Rule 12(b)(6).

## IV. CONCLUSION

Defendants respectfully request that the Court dismiss Chargois's claim for lack of personal jurisdiction or improper venue. Alternatively, the case should be transferred to the Southern District of New York. Moreover, Belfi and Keller are entitled to judgment as a matter of law that they were not parties to the alleged oral contract at issue and should be dismissed from the action.

September 30, 2021     Respectfully submitted,

**FOGLER, BRAR, O'NEIL & GRAY LLP**

*/s/ Murray Fogler*
Murray Fogler
State Bar No. 07207300
Federal I.D. No. 2003
mfogler@foglerbrar.com
2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile: (713) 574-3224
**ATTORNEY-IN-CHARGE FOR DEFENDANTS**

Robin O'Neil
State Bar No. 24079075
Federal I.D. No. 1618035
roneil@foglerbrar.com
**FOGLER, BRAR,**
**O'NEIL & GRAY LLP**
2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile: (713) 574-3224
**OF COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September, 2021, a true and correct copy of the foregoing has been served on all counsel of record by the Court's electronic filing system, as well as email as set forth below:

> Randall O. Sorrels
> Alexandra Farias-Sorrels
> James Nguyen
> SORRELS LAW
> randy@sorrelslaw.com
> alex@sorrelslaw.com
> james@sorrelslaw.com
> 5300 Memorial Dr., Suite 270
> Houston, Texas 77007
> 713-496-1100 (Tel)
> 713-238-9500 (Fax)
>
> **COUNSEL OF RECORD FOR**
> **PLAINTIFF DAMON CHARGOIS**

                                   */s/ Robin O'Neil*
                                     Robin O'Neil