United States District Court
Southern District of Texas

**ENTERED**

March 03, 2022

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAMON CHARGOIS, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-2427 |
| | § | |
| LABATON SUCHAROW, | § | |
| ERIC J. BELFI, and CHRISTOPHER | § | |
| J. KELLER, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court is Defendants Labaton Sucharow, LLP ("Labaton"), Eric J. Belfi

("Belfi"), and Christopher J. Keller ("Keller") (collectively "Defendants") Motion to Dismiss

(Doc. No. 4). Plaintiff Damon Chargois ("Plaintiff") has responded in opposition (Doc. No. 12),

and Defendants have replied in support of their Motion (Doc. No. 14). After reviewing the relevant

briefing and applicable law, the Court grants Defendant's Motion. (Doc. No. 4).

### I.      Background

This case arises out of a dispute between two law firms concerning a referral fee agreement.

In late 2006, Plaintiff was contacted by Defendant Belfi to serve as local counsel in a securities

litigation case in the Southern District of Texas. Following that case, Plaintiff informed Belfi that

he could introduce Belfi's law firm, Defendant Labaton, to other potential securities plaintiffs in a

handful of states in exchange for referral fees. Defendants met with Plaintiff to discuss the potential

financial terms of this arrangement. Plaintiff asserts that the terms of this arrangement were agreed

to in Houston, Texas. Specifically, Plaintiff claims that Defendants agreed to pay "a percentage of

the fee of **each and every** case" on which Plaintiff acted as local counsel, without geographic limitation. (Doc. No. 12 at 2). Plaintiff also claims the arrangement provided that he would receive a referral fee for clients he secured for Defendants. Plaintiff claims that following the agreement, he introduced Defendants to "multiple potential clients, in multiple states, including Texas." (Doc. No. 12 at 2). Plaintiff claims that Defendants "have caused payments to be made in the past; however, they now refuse to cause the payments to be made currently." (*Id.*). Plaintiff expected the payments to continue after the conclusion of a recent case but claims that Defendants have now asserted that he is no longer entitled to payments.

Defendants, however, believe that the initial terms of the proposed arrangement were discussed at Plaintiff's office in Little Rock, Arkansas, in July 2007. Defendants claim that this meeting also included a discussion of the Arkansas Teacher Retirement System ("ATRS") as a prospective client. All together, Defendants allege that the parties left the meeting after having a "preliminary discussion about paying Chargois' firm a referral fee in exchange for work he performed on cases involving ATRS." (Doc. No. 4-1 at 3). In April 2009, Defendants allege that Plaintiff emailed a draft letter agreement that spelled out the arrangement's terms in his view. Defendants assert that Keller returned the draft with edits and that Plaintiff never responded, so specific terms were never agreed upon.

Defendants claim that over the next several years, they filed several suits on behalf of ATRS. Defendants allege that Plaintiff did not perform any work on any of the ATRS cases and that he only appeared as local counsel for one case.[1] Defendants acknowledge that "[a]s cases resolved, the arrangement was generally discussed on phone calls, via email, or during Chargois' visits to Labaton's New York office." (Doc. No. 4 at 7). Defendants claim that in 2018, ATRS no

---

[1] Defendants acknowledge that Plaintiff is owed a fee for the case in which he appeared as local counsel.

longer permitted any finder's fees or "bare referral fees" in any current or future case. (*Id.*).[2]
Nevertheless, Defendants claim that Plaintiff continued to demand referral fees on five ATRS
cases in which he performed no work: three cases in New York and two cases in California.

On July 26, 2021, Plaintiff filed this action seeking a declaratory judgment that Defendants
are estopped from refusing to pay referral fees for his work as local counsel.

## II.    Law and Analysis

A. Rule 12(b)(2) – Personal Jurisdiction

When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must
make a *prima facie* showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602,
609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other
recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v.
Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-
conclusory, uncontroverted allegations as true and resolves conflicts between the facts contained
in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power
Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the
long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant;
and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth
Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398
(5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum

---

[2] Given this development, the Court notes that if this case remained in Texas and applied Texas law, the purported fee
agreement might be unethical since the current rules require a client's prior written consent. *See Johnson v. Brewer &
Pritchard, P.C.*, 73 S.W.3d 193, 205 (Tex. 2002) ("Rule 1.04 provides only that a fee-sharing agreement between
lawyers *who are not in the same firm* should not be made unless the client is 'advised of, and does not object to, the
participation of all the lawyers involved.'") (emphasis in original); *see also* Tex. Disciplinary R. Prof. Conduct 1.04(f).
Furthermore, the arrangement might also be unethical depending on the extent of professional services provided, or
responsibility assumed, by Plaintiff. Tex. Disciplinary R. Prof. Conduct 1.04(f). The Court need not resolve this issue.

because the Texas long-arm statute extends to the limits of federal due process. Tex. Civ. Prac. & Rem. Code § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). "[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff has made no assertion that the Court has general jurisdiction over Defendants.

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone of the minimum contacts inquiry is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Id.*

Defendants offer two arguments to demonstrate that this Court does not have specific jurisdiction over Defendants, and consequently, does not have personal jurisdiction to resolve this matter. First, Defendant argues that the terms of the alleged arrangement were discussed in Arkansas, not Texas. In his Original Petition, Plaintiff supports his claim that the terms were agreed upon in Texas by pointing to a previous deposition he gave in Massachusetts. (Doc. No. 1-4 at 9). In that deposition, Defendants point out that, though Plaintiff mentions Belfi visiting Houston and talking with Plaintiff, Plaintiff goes on to state that it was at the meeting in Little Rock when Defendants apparently expressly discussed a potential business relationship (*Id.* at 12). In short, Defendants argue that Plaintiff's cited evidence to support his claim that the parties agreed to a referral arrangement in Texas demonstrates instead that the first discussion of terms occurred later, in Little Rock, consistent with Defendants' testimony in the previous case.[3] It follows, according to Defendants, that because the initial terms were discussed in Arkansas, any contacts that Defendants have with Texas as alleged by Plaintiff would have occurred prior to any arrangement between the parties.

Additionally, Defendants argue that even if the terms were initially discussed in Houston, jurisdiction would still not be proper, as the location of the negotiation is not the decisive factor. In support of this argument, Defendants cite to *Danziger & De Llano, LLP v Morgan Verkamp, LLC*, No. 4:20-cv-144, 2021 WL 1381238 (S.D. Tex. 2021).

In *Danziger*, the court reviewed a breach of contract claim involving an alleged oral contract concerning a referral fee. *Id.* at *1. The plaintiff was a Texas law firm, while the defendants were two Ohio residents and an Ohio law firm. *Id.* Defendants filed a motion to dismiss for lack of personal jurisdiction. *Id.* The court determined that the court lacked personal

---

[3] The previous case appears to be *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196 (D. Mass. 2020).

jurisdiction over the defendants because the cases in dispute were filed, litigated, and settled in Pennsylvania. *Id.* at *4. The court reasoned that "Plaintiff supplied the only connection between Defendants and Texas . . . and as such, cannot use this relationship to show personal availment." *Id.* Defendants argue that, like in *Danziger*, none of the five cases in which Plaintiff claims he is entitled a referral fee were litigated in Texas, and consequently, Plaintiff is unable "to demonstrate that Defendants took any deliberate actions in Texas with respect to the purported fee agreement." (Doc. No. 4 at 17).

In response, Plaintiff argues that Defendants purposefully contacted Plaintiff knowing that he was in Texas, and contacted him to be retained as local counsel for a case in the Southern District of Texas, which amounts to purposeful availment. (Doc. No. 12 at 7). To support this argument, Plaintiff cites *Fintech Fund F.L.P. v. Horne*, 836 F. App'x. 215, 220 (5th Cir. 2020). In *Fintech*, the defendant made fraudulent statements in phone calls and emails to the plaintiff, a company that the defendant knew was in Texas. *Id.* at 220. Importantly, in finding that such communications satisfied the minimum contacts requirements, the Fifth Circuit held, "[t]hat [plaintiff] was in Texas when [defendant] called and emailed him may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment, satisfying the minimum contacts requirement." *Id.* at 221 (internal quotations omitted). It was not simply the communications that satisfied the minimum contacts requirement, but the tortious nature of the statements, which were the basis for the lawsuit. *Id.*

In this case, though Plaintiff has indeed stated, in his Amended Petition, that "[e]ach Defendant have [sic] committed tortious acts within this district and/or aimed their tortious acts toward this district," he has not actually pleaded any tortious conduct. (Doc. No. 11). Plaintiff only seeks declaratory relief. Furthermore, the *Fintech* case does not involve a contract dispute or a

dispute of attorney's fees. Therefore, *Fintech* is not analogous to the instant case, and the Court finds this argument unpersuasive.

Plaintiff further argues that *Danziger* is inapplicable to this case because *Danziger* discusses a breach of contract claim, whereas Plaintiff's sole claim in this action is to seek a declaratory judgment. (Doc. No. 12 at 8).[4] Plaintiff further distinguishes *Danziger* because it only involved one specific lawsuit. In contrast, the instant case involves each and every case that he has acted or may later act as local counsel, including potential cases. (*Id.* at 9).

The Court finds that *Danziger* is applicable precedent to this case and that the Court does not have jurisdiction over Defendants. This case, like *Danziger*, involves a dispute about a potential referral fee arrangement. Specifically, this case involves referral fees in five completed lawsuits, none of which were litigated in Texas, but instead were pursued in New York or California. While it is true that Plaintiff has served as local counsel for at least one case in Texas, there is no dispute about any referral fee owed with respect to that case. (*See* Doc. No. 14 at 5). The Fifth Circuit, in a recent opinion affirming *Danziger*, stated:

> Danziger was the only connection between the alleged contract and Texas. Morgan Verkamp did not perform in Texas and was not required to perform in Texas. Moreover, this alleged contract to split the fees arising from a non-Texas law firm's legal representation of a non-Texas client in a non-Texas case was centered outside of Texas. As previously stated, a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas.

---

[4] The Court notes that the federal Declaratory Judgment Act does <u>not</u> create a cause of action. *See, e.g., Reid v. Aransas Cnty.*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) ("It is well established that the federal Declaratory Judgment Act . . . does not create a substantive cause of action. A Declaratory Judgment is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law.") (internal citations and quotations omitted). Plaintiff's efforts to seek such a declaratory judgment would necessarily have to be ancillary to another cause of action and here, it is obviously the alleged breach of some agreement to pay referral fees.

*Danziger & De Llano v. Morgan Verkamp, LLC*, No. 21-20186, 2022 WL 246131 (5th Cir. Jan. 27, 2022) (cleaned up). Furthermore:

> A single act directed at the forum, state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts. An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law.

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311–12 (5th Cir. 2007).

Though Plaintiff contends that the initial negotiations and agreement were made in Houston, this is doubtful at best given the seemingly contradictory testimony given by Plaintiff in a previous deposition. The only definitive contacts that Defendants had with Texas that may relate to this alleged contract on a different case that occurred in June 2007, before the formation of the agreement, or via email to Plaintiff while he was in Texas (though there is no evidence that Defendants were aware of this). The Court finds that taken together, Defendants' alleged contacts with Texas do not amount to purposeful availment. This is underscored by the fact that the cases serving as a basis for this lawsuit were litigated outside of Texas, like in *Danziger*. Plaintiff has failed to demonstrate that Defendants took any deliberate action in Texas concerning the purported fee agreement. Even if Plaintiff had satisfied this initial burden, the Court is not convinced that exercising personal jurisdiction in this matter is satisfactory under the notions of fair play and substantial as required, particularly because the specific cases forming the basis of this lawsuit were litigated outside of Texas. This, in combination with Plaintiff's contradictory testimony about where the contract was allegedly formed, is troubling. As a result, the Court finds that it lacks specific personal jurisdiction over Defendants.

The Court, having determined that Rule 12(b)(2) dismissal is appropriate on personal jurisdiction grounds and that venue is improper under Rule 12(b)(3), does not consider the sufficiency of the Complaint under Rule 12(b)(3) or Rule 12(b)(6).

### III.    Conclusion

For the reasons stated above, the Court finds that it lacks personal jurisdiction over Defendants in this matter. The Court hereby grants Defendants' Motion to Dismiss for lack of jurisdiction under Rule 12(b)(2). (Doc. No. 4).

Signed at Houston, Texas, this 3rd day of March, 2022.

Andrew S. Hanen
United States District Judge